BRYANT, Judge.
 

 *359
 
 Where defendant's admitted that he was the driver of the vehicle, and the State presented sufficient independent corroborating evidence that defendant was the driver of the vehicle, the
 
 corpus delicti
 
 rule is satisfied and the State did not err in denying defendant's motion to dismiss the charges against him. We find no error in the judgments of the trial court.
 

 Around 10:00 p.m. on 9 April 2016, volunteer firefighter Brent Driver ("Brent") was off duty when he saw an unknown female standing in the middle of the road waving her arms back and forth on Princeton Kenly Road in Johnston County. Brent stopped, and the woman told him that a wreck had occurred, and that she had already called 911. Brent's passenger, another firefighter, went and checked the car-a white Rodeo SUV which was nose-down in a ditch on the side of the road-"to see if there was [sic] any fluids leaking from the vehicle, gas or anything like that." Brent then observed defendant David Hines, Jr., leaning against the back of the white Rodeo. Brent testified that defendant "smelled [of a] real high odor of alcohol and couldn't maintain his balance or anything." Brent asked defendant to come and sit in the back of Brent's truck "so [defendant] didn't fall and hurt himself."
 

 *360
 
 Brent noted that defendant was wearing only one white shoe. An identical white shoe was found in the driver's side floorboard of the white Rodeo. Brent also observed a cut on defendant's forehead.
 

 Trooper Chris Bell with the North Carolina State Highway Patrol responded to the scene of the accident. He first spoke with Brent, who told him that the driver of the white Rodeo-defendant-was sitting in the tailgate of his truck. As Trooper Bell approached defendant, he noticed that defendant had "a distinct sway," "bloodshot" and "glassy eyes," and he also "[d]etected a very strong odor of alcohol."
 

 Trooper Bell asked defendant for his driver's license, and defendant responded that he did not have one. Instead, he provided Trooper Bell with an ID card containing defendant's picture, name, and date of birth. When Trooper Bell asked about the accident, defendant told him he was not familiar with the area, he was the only person present in the vehicle at the time of the accident, and that he "hit the ditch" when he ran a stop sign driving approximately sixty miles per hour.
 

 *184
 
 Trooper Bell then asked defendant to fill out a standard witness statement form, which he handed to defendant as he sat on the tailgate of Brent's truck. Trooper Bell stepped away to call a tow truck, and when he returned to retrieve the witness statement from defendant about ten to fifteen minutes later, he discovered defendant "laying in the bed of the truck, passed out."
 

 Trooper Bell retrieved the witness statement form, noting that defendant had only signed and dated the form without providing a statement. Based on the information given him by defendant, Trooper Bell proceeded to fill out the witness statement in his own handwriting.
 

 At some point, Trooper Bell asked defendant to submit to a portable breath test, and defendant refused. Defendant was then arrested for driving while impaired ("DWI"), handcuffed, placed in the front passenger seat of Trooper Bell's patrol car, and driven to the Johnston County courthouse's Intoximeter room. Once there, defendant was read his rights but refused to provide "any kind of sample" for analysis and also refused standardized field sobriety testing later at the jail. Trooper Bell obtained a warrant for defendant's blood sample, and defendant was transported to Johnston Medical Center in Smithfield. Defendant's blood was drawn, and the sample was submitted to the State crime lab for analysis.
 

 On 9 April 2016, defendant was charged with DWI, driving while license revoked ("DWLR"), and careless and reckless driving. The case
 
 *361
 
 was called for trial before the Honorable W. Douglas Parsons, Judge presiding, during the 13 March 2017 Criminal Session of Johnston County Superior Court. The trial court denied defendant's pretrial motion to suppress, and defendant was tried before a jury.
 

 Defendant stipulated that he had been previously convicted of DWI three separate times, with his counsel acknowledging that "[h]e's eligible for habitual DWI." Defendant also stipulated that his license was revoked at the time of the accident on 9 April 2016.
 

 Erin Cosme, a forensic toxicologist with the North Carolina State Crime Laboratory, was qualified as an expert witness without objection. Cosme testified about the chain of custody regarding defendant's blood sample taken the day of the accident and testified that defendant's sample revealed a blood ethanol concentration of 0.33 grams of alcohol per 100 milliliters.
 

 At the close of the State's evidence, defendant moved to dismiss all charges for insufficiency of the evidence pursuant to N.C. Gen. Stat. § 15A-1227 and the
 
 corpus delicti
 
 rule. The trial court denied the motion to dismiss, noting that in addition to defendant's own admission to Trooper Bell that he was driving the white Rodeo on the day of the accident, there was also corroboration of the
 
 corpus delicti
 
 , the crime. Defendant did not present any evidence.
 

 The jury found defendant guilty of DWI, DWLR, and careless and reckless driving. Defendant admitted to aggravating factors, and he was sentenced to twenty-four months minimum, thirty-eight months maximum on the felony DWI. Defendant was also sentenced to 120 days for the misdemeanors of DWLR and careless and reckless driving. Defendant appeals.
 

 On appeal, defendant argues the trial court erred in denying his motion to dismiss the charges of (I) habitual impaired driving; (II) driving while license revoked; and (III) reckless driving to endanger.
 

 I & II
 

 Defendant first argues the trial court erred in denying his motions to dismiss the charges of (I) habitual impaired driving and (II) driving while license revoked. Specifically, defendant contends that the trial court erred in denying his motions to dismiss under the
 
 corpus delicti
 
 rule, where a trooper testified that defendant admitted at the scene that he was the driver of the wrecked car but where there was otherwise
 
 *362
 
 no corroborative evidence, independent of defendant's extra-judicial confession. We disagree.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citing
 
 State v. McKinnon
 
 ,
 
 306 N.C. 288
 
 , 298,
 
 293 S.E.2d 118
 
 , 125 (1982) ). "Upon
 
 *185
 
 defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (quoting
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ).
 

 "When the State relies upon a defendant's extrajudicial confession, we apply the
 
 corpus delicti
 
 rule 'to guard against the possibility that a defendant will be convicted of a crime that has not been committed.' "
 
 State v. Cox
 
 ,
 
 367 N.C. 147
 
 , 151,
 
 749 S.E.2d 271
 
 , 275 (2013) (quoting
 
 State v. Parker
 
 ,
 
 315 N.C. 222
 
 , 235,
 
 337 S.E.2d 487
 
 , 494 (1985) ). "This inquiry is preliminary to consideration of whether the State presented sufficient evidence to survive the motion to dismiss."
 

 Id.
 

 The
 
 corpus delicti
 
 rule is historically grounded on three policy justifications: (1) to "protect[ ] against those shocking situations in which alleged murder victims turn up alive after their accused killer has been convicted and perhaps executed"; (2) to "ensure[ ] that confessions that are erroneously reported or construed, involuntarily made, mistaken as to law or fact, or falsely volunteered by an insane or mentally disturbed individual cannot be used to falsely convict a defendant"; and (3) "to promote good law enforcement practices [by] requir[ing] thorough investigations of alleged crimes to ensure that justice is achieved and the innocent are vindicated."
 

 Id.
 

 (alterations in original) (quoting
 
 State v. Smith
 
 ,
 
 362 N.C. 583
 
 , 591-92,
 
 669 S.E.2d 299
 
 , 305 (2008) ). "Traditionally, our
 
 corpus delicti
 
 rule has required the State to present corroborative evidence, independent of the defendant's confession, tending to show that '(a) the injury or harm constituting the crime occurred [and] (b) this injury was done in a criminal manner.' "
 

 Id.
 

 (citation omitted) (quoting
 
 Smith
 
 ,
 
 362 N.C. at 589
 
 ,
 
 669 S.E.2d at
 
 304 ).
 

 [T]he [
 
 corpus delicti
 
 ] rule requires the State to present evidence tending to show that the crime in question
 
 *363
 
 occurred. The rule does not require the State to logically exclude every possibility that the defendant did not commit the crime. Thus, if the State presents evidence tending to establish that the injury or harm constituting the crime occurred and was caused by criminal activity, then the
 
 corpus delicti
 
 rule is satisfied and the State may use the defend-ant's [sic] confession to prove his identity as the perpetrator.
 

 Id.
 
 at 152,
 
 749 S.E.2d at
 
 275 (citing
 
 State v. Trexler
 
 ,
 
 316 N.C. 528
 
 , 533,
 
 342 S.E.2d 878
 
 , 881 (1986) ). "Significantly, however, 'a confession identifying
 
 who committed the crime
 
 is not subject to the
 
 corpus delicti
 
 rule.' "
 
 State v. Sawyers
 
 , --- N.C. App. ----, ----,
 
 808 S.E.2d 148
 
 , 152 (2017) (citation omitted) (quoting
 
 State v. Ballard
 
 ,
 
 244 N.C. App. 476
 
 , 480,
 
 781 S.E.2d 75
 
 , 78 (2015) ).
 

 In
 
 Trexler
 
 , a DWI case, the defendant admitted that he wrecked his car after drinking, left the scene, and returned a short time later.
 
 316 N.C. at 533
 
 ,
 
 342 S.E.2d at 881
 
 . The trial court concluded that the following independent evidence established the
 
 corpus delicti
 
 , the crime: an overturned car was lying in the middle of the road; when the defendant returned to the scene, he appeared impaired from alcohol; the defendant measured a .14 on the breathalyzer; and the wreck was otherwise unexplained.
 

 Id.
 

 The North Carolina Supreme Court held that the trial court did not err when it denied the defendant's motion to dismiss based on the defendant's argument that the State failed to prove the
 
 corpus delicti
 
 of impaired driving.
 
 Id.
 
 at 535,
 
 342 S.E.2d at 882
 
 .
 

 In the instant case, in addition to defendant's statement to Trooper Bell that he was the driver of the wrecked vehicle and defendant's appearance of intoxication, the State presented sufficient independent corroborating evidence that defendant had been driving the wrecked vehicle while impaired: (1) the wrecked vehicle found nose down in a ditch; (2) one shoe was found in the driver's side footwell of the vehicle, and defendant was wearing the matching shoe; (3) no one else was in the area at the time of the accident other than defendant, who appeared to be appreciably impaired; (4) defendant had an injury-a cut on his forehead-consistent
 
 *186
 
 with having been in a wreck; and (5) the wreck of the white Rodeo could not otherwise be explained. As to independent evidence of defendant's impairment, the State's expert witness in toxicology testified that defendant's blood sample taken the date of the accident had a blood ethanol concentration of 0.33 grams of alcohol per 100 milliliters as defined by
 
 N.C. Gen. Stat. § 20-4.01
 
 .
 
 *364
 
 Accordingly, pursuant to
 
 Trexler
 
 , the State offered sufficient corroborating evidence independent of defendant's own admission to Trooper Bell that he was the driver of the wrecked vehicle, and the trial court did not err in denying defendant's motion to dismiss based on the
 
 corpus delicti
 
 rule.
 

 As for defendant's motion to dismiss based on the insufficiency of the evidence, this argument also fails.
 

 A person commits the offense of habitual impaired driving if he drives while impaired as defined in G.S. 20-138.1 and has been convicted of three or more offenses involving impaired driving as defined in G.S. 20-4.01(24a) within 10 years of the date of this offense.
 

 N.C. Gen. Stat. § 20-138.5
 
 (a) (2017). "To convict a defendant under
 
 N.C. Gen. Stat. § 20-28
 
 (a) of driving while his license is revoked the State must prove beyond a reasonable doubt (1) the defendant's operation of a motor vehicle (2) on a public highway (3) while his operator's license is revoked."
 
 State v. Richardson
 
 ,
 
 96 N.C. App. 270
 
 , 271,
 
 385 S.E.2d 194
 
 , 195 (1989) (citing
 
 State v. Atwood
 
 ,
 
 290 N.C. 266
 
 , 271,
 
 225 S.E.2d 543
 
 , 545 (1976) ).
 

 At trial, defendant stipulated that on 9 April 2016, his license was revoked for an impaired driving conviction. He also stipulated to three previous convictions for DWI within ten years of 9 April 2016: on 11 January 2013 in Wilson County; on 3 April 2008 in Nash County; and on 17 October 2008 in Wilson County. As such, defendant has met the statutory requirements for habitual DWI pursuant to
 
 N.C. Gen. Stat. § 20-138.5
 
 (a) and DWLR pursuant to
 
 N.C. Gen. Stat. § 20-28
 
 (a), and the trial court did not err in denying defendant's motion to dismiss for insufficiency of the evidence pursuant to N.C. Gen. Stat. § 15A-1227. Defendant's arguments are overruled.
 

 III
 

 Defendant argues the trial court erred in denying his motion to dismiss the charge of reckless driving to endanger for the same reasons enunciated in Sections I & II, or in the alternative, because the State's evidence was insufficient to withstand defendant's motion to dismiss.
 

 The essential elements of the charge of reckless driving to endanger include the following:
 

 (a) Any person who drives any vehicle upon a highway or any public vehicular area carelessly and heedlessly in
 
 *365
 
 willful or wanton disregard of the rights or safety of others shall be guilty of reckless driving.
 

 (b) Any person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving.
 

 N.C. Gen. Stat. § 20-140
 
 (a) - (b) (2017).
 

 For the reasons stated in Sections I & II, the
 
 corpus delicti
 
 rule was satisfied by the State's evidence presented in the trial court. Defendant admitted to Trooper Bell that he was the driver of the wrecked vehicle and that he was not familiar with the area and ran a stop sign going sixty miles per hour before crashing, and defendant appeared intoxicated at the scene. Thus, the State presented sufficient independent corroborating evidence that defendant was recklessly driving the vehicle while impaired.
 

 In
 
 Sawyers
 
 , the defendant was charged with and convicted of,
 
 inter alia
 
 , DWI, DWLR, and reckless driving. --- N.C. App. at ----,
 
 808 S.E.2d at 151-52
 
 . On appeal, the defendant argued the State presented insufficient evidence, independent of the defendant's own extrajudicial confession to a state trooper, to establish that he was driving the car. This Court noted that the "[d]efendant's argument demonstrate[d] a common misunderstanding of the
 
 corpus delicti
 
 rule[,]" and that the State had "presented substantial
 
 *187
 
 evidence to establish that the cause of the car accident was criminal activity, i.e. reckless and impaired driving."
 

 Id.
 

 at ----,
 
 808 S.E.2d at 152
 
 . This Court reasoned that "[w]hile it may have been unclear at that time whether [the] defendant or [another individual] was the driver, the
 
 corpus delicti
 
 rule merely 'requires the State to present evidence tending to show that the crime in question occurred.' "
 

 Id.
 

 (quoting
 
 Cox
 
 ,
 
 367 N.C. at 152
 
 ,
 
 749 S.E.2d at 275
 
 ). The State's evidence included the fact that the driver of the car had been speeding and driving in an unsafe manner and both of the vehicle's occupants were emanating an odor of alcohol.
 

 Id.
 

 Accordingly, this Court determined the
 
 corpus delicti
 
 rule had been satisfied.
 

 Id.
 

 (citation omitted).
 

 In the instant case, the State presented sufficient evidence that defendant's single-vehicle accident, which resulted from impaired driving, speeding, and running a stop sign, resulted in both property damage to the wrecked vehicle and personal injury to defendant. As such, the State presented sufficient evidence that defendant operated the white Rodeo on 9 April 2016 while impaired and in a reckless manner, sufficient to satisfy the elements of that crime.
 
 See
 
 N.C.G.S. § 20-140(a) - (b). Accordingly, the
 
 *366
 
 trial court did not err in denying defendant's motion to dismiss the reckless and careless driving charge, and defendant's argument is overruled.
 

 NO ERROR.
 

 Judges CALABRIA and HUNTER, JR. concur.